UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MOHAMED AHMED MOKBEL-ALJAHMI,

                Plaintiff,                      Case No: 15-12537
                                                   Hon. VICTORIA A. ROBERTS

v.

UNITED OF OMAHA LIFE INSURANCE
COMPANY,

                Defendant.
_____/

**ORDER**

**I.    INTRODUCTION**

This matter is before the Court on cross-motions for summary judgment.

The Complaint alleges a violation of the Employee Retirement Income Security Act of 1975 ("ERISA") § 502(a) and 29 U.S.C. § 1132(a), (e), (f), and (g). Aljahmi contends that United wrongfully terminated his long-term disability benefits. United contends that Aljahmi has not established by a preponderance of the evidence that he was "disabled."

Aljahmi requests this Court, on *de novo* review, to: (1) reverse United's decision to terminate his benefits; (2) declare that Aljahmi was and is disabled under the plan and policy; and, (3) grant Aljahmi relief.

For the reasons that follow:

Plaintiff's Motion for Summary Judgment is **GRANTED**;

Defendant's Motion for Summary Judgment is **DENIED**.

## II.    BACKGROUND

Aljahmi worked for L&W Engineering Company from August 31, 1998 until February 11, 2011, Aljahmi performed various duties in the operation of welding machinery. The job description indicates that the position requires light strength and may require significant standing, walking, pushing, and/or pulling.

Aljahmi participated in L&W Inc.'s ERISA qualified benefit plan. United issued the Group Long Term Disability Insurance Policy ("Policy") to L&W Inc. Under the Policy, United agreed to pay insured persons long-term disability benefits ("LTD") subject to the terms and conditions of the Policy. L&W Inc. self-insured a short-term disability ("STD") benefits program for eligible employees; it retained United to review claims under the Policy.

Aljahmi began experiencing neck and back pain in 2003. In 2011, he was involved in a motor vehicle accident ("MVA"). His pain became more severe because of the accident and he experienced increased back, left leg, and neck pain, along with right arm pain and numbness. Aljahmi's doctor recommended that Aljahmi take off work. He did but never returned. Aljahmi's last day of work was February 11, 2011. He received STD benefits for 26 weeks.

Under the terms of the Policy, a participant is entitled to receive a monthly disability benefits if he or she is "disabled." The Policy defines disabled:

> Disability and Disabled means that because of an Injury or Sickness, a significant change in Your mental or physical functional capacity has occurred in which You are:
>
> •    prevented from performing at least one of the Material Duties of Your Regular Occupation on a part-time or full-time basis; and

- unable to generate Current Earnings which exceed 80% of your Basic Monthly Earnings due to that same Injury or Sickness.

After a Monthly Benefit has been paid for 24 months Disability and Disabled mean You are unable to perform all of the Material Duties of any Gainful Occupation.

Disability is determined relative to Your ability or inability to work. It is not determined by the availability of a suitable position with Your employer.

The Policy defines Gainful Occupation as:

an occupation, for which You are reasonably fitted by training, education, or experience, is or can be expected to provide You with Current Earnings at least equal to 60% of Basic Monthly Earnings within 12 months of Your return to work.

When Aljahmi stopped work, he earned $2,445.73 per month; Gainful Occupation earnings would be 60% of that, or $1,467.44 per month.

Supporting his claim for LTD benefits were MRIs of his lumbar and cervical spines, and both shoulders; an EMG of his lower and upper extremities; and, opinions and medical records from his treating doctors.

Aljahmi's treating neurologist for 12 years, Bassam Maaz, M.D. diagnosed Aljahmi with lumbar radiculopathy, lower back pain from degenerative changes and bulging discs, neck pain secondary to herniated discs C3-C4, C4-C5, shoulder rotator cuff syndrome and depression. Dr. Maaz found that Aljahmi could not perform sedentary or light work on a sustained basis, could not sit, stand, and/or walk for more than one hour each day, could only lift and carry up to five pounds occasionally, required complete freedom to rest frequently without restriction. Dr. Maaz concluded that these impairments would last for life. 612; 11-1; Pg. ID 177-189. Dr. Maaz also found that Aljahmi's strength was 5/5 bilaterally in all upper extremities, 5/5 in all muscle

groups of the right leg, and 4/5 in all muscle groups on the left leg. He also said that while Aljahmi uses a cane for support, his heel, toe and tandem walking are performed without difficulty, and coordination was intact. 11-6, 907-09. In Dr. Maaz's April 25, 2013 examination notes, he says that Aljahmi was able to work until his motor vehicle accident, and observes that Aljahmi had increased low back and neck pain since the car accident. 11-6, 904-06. Aljahmi underwent trigger point injections for pain relief; that typically resulted in a mild decrease in pain by the end of the treatment. 11-8, 1111-1112; 11-6, 901-903.

Dr. Mahmoud Rahim, M.D. Aljahmi's treating internist, diagnosed Aljahmi with bilateral carpal tunnel syndrome, osteoarthritis, major depression, hypertension, cardiomyopathy, obesity, fatigue secondary to head, neck, back injury, low back pain with disc lesion, and shoulder injury with pain. Dr. Rahim found Aljahmi to be in severe pain and suffering severe weakness or fatigue. Dr. Rahim also found that Aljahmi could not perform sedentary or light work on a sustained basis, could sit, stand, and/or walk for less than one hour each day, could not lift up to five pounds on a regular and sustained basis, could not use his hands on a regular and sustained basis, required complete freedom to rest frequently without restriction, and would need to elevate his lower extremities 3-4 hours a day. Admin R. 11-4, Pg. ID 613-23.

Aljahmi's treating orthopedic specialist, Jiab Suleiman, M.D., limited Aljahmi to three hours of sitting and one hour of standing and walking, with restrictions on lifting/carrying, bending, squatting, crawling, climbing, and reaching above the shoulder level. Dr.Suleiman said Aljahmi's prognosis for recovery was poor, and concluded that

Aljahmi was disabled from doing housework, caring for his personal needs and driving. Admin R. 11-7, Pg. ID 994,1017.

United concluded that Aljahmi was disabled from the Material Duties of his own occupation and paid him LTD benefits for the full 24 months of the Policy's own occupation period.

United continued to assess and review Aljahmi's eligibility for benefits. On August 27, 2013, United terminated Aljahmi's LTD benefits, concluding that he did not meet the requirements to continue to be disabled under the "Any Gainful Occupation" requirement of the Policy. It discontinued his benefits. (Admin R. Doc. 11-5 Pg. ID 670).

Aljahmi appealed the termination of LTD benefits and submitted additional evidence of disability.

On July 28, 2014, United announced it was overturning the denial of benefits after August 27, 2013; LTD benefits were reinstated. On May 21, 2014, Aljahmi underwent a medical examination scheduled by United, with Dr. Joseph Salama. Dr. Salama believed that Aljahmi could work as a welder, should have restrictions of no lifting of more than ten pounds with no bending, twisting, or squatting more than five times an hour, and should continue with his medication regimen and trigger point injections from time to time. Dr. Salama said that while Aljahmi is able to perform these activities, it would increase his symptoms. Dr. Salama otherwise agreed with the restrictions set forth by Aljahmi's treating physicians.  Dr. Salama was unable to determine if the restrictions were permanent. Admin R. 11-3 Pg. ID 488.

Nurses reviewed various medical records for United. Nurse Julie Grancer did a review on March 25, 2013. Grancer said Aljahmi could not carry more than twenty

pounds, and that he should avoid frequent neck flexion, overhead reaching, climbing, crawling, frequent bending, extension and rotation, and repetitive wrist motion and extremes of wrist flexion and extension. Admin R. Doc. 11-8 Pg. ID 1172. In a later review of records, on July 13, 2013, Grancer precluded Aljahmi from constant neck motion in flexion, extension and rotation, frequent overhead reaching, crawling and climbing, repetitive motion of the right shoulder, repetitive bending/twisting, and lifting or carrying greater than twenty pounds. Admin. R. Doc. 11-8 Pg. ID 1176.

On August 8, 2013, United had a transferable skills analysis ("TSA") done by Palmer Vocational Services, LLC. Douglas Palmer found that Aljahmi could perform three light exertion level jobs: inserting machine operator, cafeteria attendant, and automobile self-serve attendant, all of which Palmer noted existed where Aljahmi resided.

On November 4, 2014, United had another TSA done, this time by Patricia Thal of University Disability Consortium ("UDC"). Her finding was that Aljahmi could perform four light exertional level jobs: gate guard/security, cashier, small product assembler, and solderer, and two sedentary jobs: surveillance-system monitor and assembler, semi-conductor. Admin R. Doc. 11-3 Pg. ID 392.

United terminated Plaintiff's LTD benefits for a second time on March 23, 2015. United relied on Thal's TSA and on a medical review performed by a consultant on February 25, 2015, Admin. R. 11-2 Pg. ID. 246-47.  Aljahmi alleges the review report cannot be found in the record, and, therefore, there was no such review.

Aljahmi appealed and presented additional medical and vocational evidence. Dr. Maaz's updated opinion dated April 14, 2015 noted that Aljahmi's medical condition and residual functional capacity were substantially the same. 11-1,177.

Aljahmi submitted two vocational expert reports and opinions. James Fuller's report describes Aljahmi's English language communication skills as adequate, and at best, basic, and found that Aljahmi can read on a 3.9 grade level and is functionally illiterate. Mr. Fuller concluded that Aljahmi has only unskilled employment in his work history, has no transferrable skills from education or work history, and that he is unemployable and not a candidate for vocational rehabilitation services. 11-2 193-96.

Scott Silver opined that the surveillance system monitor job identified by Thal in her TSA no longer exists in the economy and had been replaced by TSA government jobs and casino security jobs, which are semi-skilled to skilled jobs that are of a light exertional level.

In response to Aljahmi's second appeal, United ordered a medical file review by Dr. James Lambur of UDC and another TSA by Thal. Dr. Lambur did not treat or examine Aljahmi, and concluded there is no consistent evidence of neurological muscular or functional deficit, that none of the findings are of a severe nature, and, that Aljahmi is able to engage in a sedentary level of activity. He also found that the restrictions and limitations provided by attending physicians were not supported and that while there was no evidence to support malingering, the lack of clinical evidence supports the possibility of magnification. 11-1 147-54

Thai's June 5, 2015, TSA found that Aljahmi could perform six light exertion level jobs:  in-store greeter and parking lot attendant, and the four from her earlier TSA, and

the same two sedentary jobs. Thal did not consider Aljahmi's treating doctors' opinions in her TSA, or the opinions of Fuller and Silver.

## III.    STANDARD OF REVIEW

Fed. R. Civ. P. 56(c) provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In reviewing a motion for summary judgment, "the evidence as well as all inferences drawn therefrom must be read in a light most favorable to the party opposing the motion." *Kochins v. Linden-Alimak, Inc.*, 799 F.2d 1128, 1133 (6th Cir.1986).

The movant has the initial burden to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant meets this burden, the nonmoving party must, by affidavit or otherwise as provided by Rule 56, "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The essential inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52. If the nonmoving party does not respond with specific facts showing a genuine issue for trial, summary judgment is appropriate *Emmons v. McLaughlin*, 874 F.2d 351, 353 (6th Cir.1989).

When considering cross-motions for summary judgment, the Court addresses "each party's motion on its own merits, taking care in each instance to draw all

reasonable inferences against the party whose motion is under consideration." *Taft Broadcasting Co. v. United States*, 929 F.2d 240, 248 (6th Cir.1991) (quoting *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed. Cir.1987). The fact that both parties moved for "summary judgment, and each contends in support of his respective motion that no genuine issue of fact exists, does not require the Court to rule that no issue exists." *Begnaud v. White*, 170 F.2d 323, 327 (6th Cir.1948).

The Supreme Court ruled that "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). "When applying a *de novo* standard in the ERISA context . . . [t]he [plan] administrator's decision is accorded no deference or presumption of correctness." *Hoover v. Provident Life & Acc. Ins. Co.,* 290 F.3d 801, 808-09 (6th Cir.2006). The district Court must take a "fresh look" at the administrative record. *Wilkins v. Baptist Healthcare System, Inc.*, 150 F.3d 609, 619 (6th Cir. 2003). The Court is to conduct its review based "solely upon the administrative record," *id.,* and generally may not consider "evidence not presented to the plan administrator." *Perry v. Simplicity Eng'g*, 900 F.2d 963, 966 (6th Cir.1990).

## IV.   ANALYSIS

To succeed on his claim for disability benefits under ERISA, Aljahmi "must prove by a preponderance of the evidence that he was 'disabled,' as that term is defined" in the Policy. *Jarvey v. Lucent Techs.*, *Inc. Long Term Disability Plan for Mgmt. Or LBA Emples.*, 741 F.3d 686, 700 (6th Cir.2014).

Initially, it appears that post-appeal, Aljahmi complains of many ailments that he alleges contribute to his disability. He added complaints of chronic obstructive pulmonary disease, fatigued, impaired gait, side effects of medication, PSTD, obesity, cardiomyopathy, and high blood pressure as causes of his disability. However, the Court will not determine his disability for matters the administrator did not consider.

When it discontinued benefits in March, 2015, United had in its possession many of the same documents that led it to re-instate Aljahmi's LTD benefits on July 18, 2014. These documents include:

-Dr. Suleiman's February 8, 2013 Attending Physician's Statement;

-Dr. Rahim's examinations of Aljahmi, where United explains that on all thirty-five of these occasions, Dr. Rahim found Aljahmi's neck to be supple and without swelling or tenderness and there was no complaint of shoulder pain. Twenty-three of these reports were in United's possession prior to re-instating Aljahmi's benefits;

-Objective test results disclosed by Plaintiff, including five MRI's and an electrodiagnostic examination, all performed prior to April 30, 2011.

-Dr. Salama's May 21, 2014 independent medical examination report.

United relied on all of this information in making its decision to re-instate Aljahmi's benefits. United did receive other information after re-instating Aljahmi's benefits on July 18, 2014 and before terminating benefits on March 23, 2015:

-Dr. Maaz's September 11, 2014 and December 15, 2014 evaluations which note that there is no numbness, tingling, or weakness in any of the extremities, no joint pain, redness, or swelling, and no back pain. However, Dr. Maaz's

assessment notes severe back and neck pain, secondary to herniated bulging discs. He also says right cervical radiculopathy is a concern as well as bilateral shoulder pain and left lumbar radiculopathy. These concerns are noted in all of Dr. Maaz's records.

-Thal's November 14, 2014 TSA, which found Aljahmi able to perform two sedentary jobs and four light level jobs.

-Dr. Maaz's December 1, 2014 medical assessment, which notes that Aljahmi's medical condition and his residual functional capacity for work activity appear worse than in the assessment completed on May 29, 2012. He said Aljahmi still could not perform sedentary work or light work on a sustained basis, required complete freedom to rest frequently without restriction, and was unable to work.

-Dr. Rahim's December 21, 2014 Supplementary Report of Disability which diagnosed Aljahmi as permanently and totally disabled.

-Dr. Rahim's August 9, 2014 - January 6, 2015 consultation notes, which repeat the same information from his notes upon examination taken prior to the re-instatement of LTD benefits: neck is supple with no swelling or tenderness, back is tender on palpitation and muscles spasm, and there is normal movement of all extremities, joint tenderness, muscle tenderness, and no swelling.

In deciding to terminate Aljahmi's LTD benefits, United relied heavily on Dr. Maaz's September 11, 2014 and December 1, 2014 evaluation notes. These notes mention there is no numbness, tingling, or weakness in any of the extremities, no joint pain, redness, or swelling, and no back pain. It also relies on Thal's TSA and

information it had prior to re-instating benefits. However, it appears to the Court that United disregarded the rest of the documents submitted to it.

United had the opportunity to reconsider its decision to terminate Aljahmi's benefits, and possessed this additional medical evidence:

-Dr. Maaz's April 3, 2015 evaluation which notes there is no numbness, tingling, or weakness in any of the extremities, no joint pain, redness, or swelling, and no back pain. However, the assessment notes severe back and neck pain, secondary to herniated and bulging discs, and right cervical radiculopathy was a concern. The record continued to reiterate bilateral shoulder pain and left lumbar radiculopathy.

-Dr. Maaz's April 14, 2015 medical assessment, which notes that Aljahmi's medical condition and his residual functional capacity for work activity are worse than the assessment completed on May 29, 2012. Aljahmi still could not perform sedentary work or light work on a sustained basis, required complete freedom to rest frequently without restriction, and was unable to work.

-James Fuller's April 14, 2015 Vocational Assessment which observed obvious pain in Aljahmi's movements, and noted that at best, Aljahmi had basic english language communication skills, was functionally illiterate, incapable of using a computer, incapable of working in competitive employment, had no wage earning capacity,  and was not a candidate for vocational rehabilitation services.

-Scott Silver's May 20, 2015 Vocational Opinion, which explained that the sedentary surveillance job suggested by United's TSA's no longer, exists.

-Thal's June 5, 2015 TSA, where she found Aljahmi capable of two sedentary jobs and six light level jobs.

-Dr. Lambur's June 4, 2015 medical file review, which found no consistent evidence was presented of notable neurological muscular or functional deficit recorded, and he said the evidence of mild bilateral carpel tunnel and mild lumbar radiculopathy was not severe in nature and Aljahmi was able to engage at a sedentary level of activity.

In crafting her TSAs, Thal only considered the physical capacity limits set forth by United's nurse or doctors; she did not consider the limitations set forth by Aljahmi's treating doctors. In *Spangler v. Lockhead Martin Energy Systems*, 313 F.3d 356, 362 (6th Cir.2002), the Court concluded that an insurance company that did the same thing was "cherry-picking" the file in hopes of obtaining a favorable report.

On June 8, 2015, United affirmed its decision to terminate Aljahmi's benefits. The Court regards the TSAs and paper review conducted by UDC with skepticism. The Court in *Velikanov*, found the UDC to be biased and unreliable. *Velikanov v. Union Sec. Ins. Co.*, 626 F. Supp. 2d 1039, 1051-52. But this is not dispositive.

More importantly, the Court is puzzled by the little weight United gives to the treating doctors' opinions. While United did use parts of Dr. Maaz's evaluations of Aljahmi to justify its termination of the LTD benefits, it does not seem to have considered the treating doctors' opinions as a whole. While treating doctors' findings are not given deferential weight, United must give them due consideration and have good reasons to reject their opinions. *Elliot v. Metro. Life. Ins. Co.*, 473 F.3d 613, 620-21 (6th Cir.2006). Nevertheless, giving great weight to a medical opinion that is neither the

13

result of treatment nor examination, for no apparent reason, in the face of ample evidence of disability based on examinations and findings, leads this Court to conclude that United acted arbitrarily in terminating benefits.

Furthermore, Dr. Lambur limited Aljahmi to sedentary work; this eliminates the six light level jobs in Thal's most recent TSA. That leaves the surveillance-system monitor job and the assembler, semi-conductor job. Vocational expert Scott Silver explained that the surveillance-system monitor job no longer exists: that job was taken over by Homeland Security. Casinos security monitoring jobs now require more experience and qualifications, and usually involve more than sedentary work.

To sum, the Court finds that Aljahmi is entitled to benefits.

*Enlargement of the Record*

United objects to Exhibit 1 of Plaintiff's Brief, which is a letter from the Social Security Administration dated September 9, 2014, and Exhibit 2 of Plaintiff's Brief in Response to Defendant's Cross-Brief for Judgment, which is a letter from the Appeals Council of the Social Security Administration dated October 20, 2015. The administrative record closed on June 8, 2015. Exhibit 1 was available during administrative review, but Aljahmi failed to submit it. Exhibit 2 came after June 8, 2015, after the administrative record was closed.

The general rule is that "review of a denial of benefits by a district Court is confined to the administrative record developed by the plan administrator." *Wilkins v Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 618 (6th Cir.1998) (citing *Perry v. Simplicity Engin'g*, 900 F.2d 963, 966 (6th Cir.1990)). The exception is "where the plaintiff alleges that she has been denied due process by the plan administrator, or the administrator

14

was burdened with a conflict of interest — issues on which the administrative record itself would shed no light — circuit precedent permits additional evidence relevant to those issues to be presented to the district court." Id. at 619.

*Price v. Hartford Life & Accident Ins. Co.*, 746 F. Supp. 2d 860, 862 (E.D. Mich. 2010)

Aljahmi alleges that these exhibits were filed solely to establish a procedural fact concerning Aljahmi's Social Security Disability case and to rebut Defendant's speculative conclusion that the claim was denied. The exhibits are stricken.

### *Relief*

In his brief, Aljahmi argues that he should be awarded costs, attorney's fees, penalty, prejudgment, and postjudgment interest. Beyond citing to the five-factor test in *King*, plaintiff provides no argument on how these factors should be applied. *Sec'y of the Dep't of Labor v. King*, 775 F.2d 666 (6th Cir.1985). Furthermore, he fails to provide any guidance to the Court on calculation of interest. It is the Court's belief that the 12% penalty that Aljahmi refers to may be unlawful. *Ford v. Uniroyal Pension* Plan, 154 F.3d 613, 616 (6th Cir.1998). Defendant fails to address Plaintiff's request for relief.

Accordingly, the Court directs the parties to attempt to stipulate to a judgment amount that addresses these requests. Short of that, the parties will need to brief these issues.

## V.   CONCLUSION

Aljahmi submitted medical evidence from numerous doctors who directly treated him for years and consistently concluded that he was unable to work. Although there were a few inconsistencies in Dr. Maaz's evaluations, overall Dr. Maaz and the rest of Aljahmi's treating doctors repeatedly found him unable to work. The opinions of the

treating doctors presented to United after it reinstated benefits repeat essentially the same information as the opinions prior to reinstatement. The only differences are Thal's TSAs and Dr. Lambur's file review, which the Court views with skepticism and which contradict each other. Neither Thal nor Lambur examined Aljahmi. United offers little to contradict Aljahmi's evidence. The Court finds by a preponderance of the evidence that Aljahmi is entitled to benefits.

United's decision is reversed. Aljahmi is entitled to benefits in the amount of $1,467.44 per month from March 23, 2015 to the date of judgment. The parties are to present a stipulated judgment that covers attorney's fees, costs, penalty, prejudgment and postjudgment interest. If they are unable to do that, they are required to file supplemental briefs.

A stipulated judgment or Plaintiff's supplemental brief is due on October 14, 2016.

The Court **DENIES** Defendant's Motion for Summary Judgment and **GRANTS** Plaintiff's Motion for Summary Judgment.

**IT IS ORDERED.**

s/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:  September 30, 2016

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on September 30, 2016.

s/Linda Vertriest
Deputy Clerk

16